IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UTAH LABOR COMMISSION - ANTIDISCRIMINATION & LABOR DIVISION,<br><br>Plaintiff,<br><br>v.<br><br>PARADISE TOWN, LEE ATWOOD,<br><br>Defendants. | **ORDER and MEMORANDUM DECISION**<br><br><br>Case No. 1:08-cv-158 CW |

      The Town of Paradise, Utah, refused to grant an accommodation requested by Roland and Ruth Leishman, the parents of Christine Leishman, a disabled woman. The Leishmans live in a zone in the Town that allows only one single family dwelling per lot. The Leishmans requested an exception from the zoning requirement as an accommodation for Christine's disability to allow her twenty-four hour caregivers to live in an adjacent building on the parents' property. The Utah Labor Commission brought this action against the Town and Lee Atwood, its mayor, alleging that the refusal is a violation of the Fair Housing Act, 42 U.S.C. § 3604, the Utah Fair Housing Act, and Americans with Disabilities Act. The Leishmans have intervened.

      The matter is now before the court on the Town's motion for summary judgment. First, the Town seeks a ruling that the Leishman's request for an accommodation was unreasonable. Second, the Town argues that its denial of the accommodation in this situation is exempted by the FHA or the Utah FHA. The Town argues further that the building where the caregivers live is not a dwelling and thus is not covered by the FHA or Utah FHA. Finally, the Town argues that

the relief should be denied because the Leishmans have unclean hands.  Mr. Atwood also seeks summary judgment, arguing that Plaintiffs have not presented sufficient facts to hold him personally liable.  For the reasons below, the court DENIES the Town's motion, but GRANTS summary judgment for Mr. Atwood.

**I.     Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[1]  Courts must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[2]  "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented."[3]  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."[4]

**II.    Reasonableness of Request**

Under the FHA, it is a discriminatory practice to refuse to make "a reasonable

---

[1] Fed. R. Civ. P. 56(c).  *See also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[2] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[3] *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling."[5] Under Tenth Circuit law, a "reasonable accommodation" is defined as "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual."[6]

> In determining whether the reasonableness requirement has been met, a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped. It may also consider whether alternatives exist to accomplish the benefits more efficiently. And in measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs. "Reasonable accommodations" do not require accommodations which impose undue financial and administrative burdens . . . Or changes that would constitute fundamental alterations in the nature of the program.[7]

Here, the Leishmans' requested accommodation is to receive a conditional use permit or other exception to the zoning laws allowing them to house Christine's caregivers in the outbuilding despite the fact the property is only zoned for one single family dwelling.[8] The Town argues that the Leishmans' request is unreasonable. The Town does not argue that any undue burdens are involved in the Leishmans' request, nor does the record support any such argument. Instead, the Town argues that the request would fundamentally alter the nature of their zoning

---

[5] 42 U.S.C. § 3604(f)(3)(B).

[6] *Bangerter v. Orem City*, 46 F.3d 1491, 1502 (10th Cir.1995).

[7] *Bryant Woods Inn v. Howard County, Md.*, 124 F.3d 597, 604 (4th Cir. 1997).

[8] Before this action was commenced, the Town granted a 120 day conditional use permit to the Leishmans allowing them the accommodation they now seek. That permit, however, has expired and the Town has not renewed it despite the Leishmans' request to do so. In any event, for the purposes of this motion, it is not material what technical form the Leishmans' accommodation takes, whether it is labeled a conditional use permit or otherwise.

plan. But this argument fails because the Leishmans seek only a conditional use permit or other accommodation, not a re-zoning of their lot, much less of the entire area. The Town's argument is premised on a misconception that allowing the accommodation to the Leishmans would require it to allow other residents to place dual residences on their single family lots. The accommodation, however, is an exception, not a fundamental change of the zoning requirements. Similar exceptions would have to be granted only if there were other residents who also had disabled members of their families who needed the same accommodation.[9]

The Town also argues that the exception should not be allowed because it was willing to grant the Leishmans as an alternative accommodation the right to have the caregivers live in a basement apartment or an addition to the residence. There remains, however, a disputed issue of fact as to whether, given all of the circumstance, these alternatives were reasonable. For example, if the caregivers were to live in a basement apartment, the same number of people would still be living on the same lot. The same number of vehicles would be parked on the lot. The traffic in the streets in the neighborhood would be the same and the outbuilding would remain on the property. Thus the burden on the Town and the impact to the zoned area would not change.

The burden on the Leishmans, however, would be significantly different. They have an existing building that appears to meet the requirements for habitability. To accept the Town's proposed accommodation, the Leishmans may be required to incur significant expense to modify the entrance to the basement apartment or to build an addition onto the main residence. All of

---

[9]Though the court doubts that it would change the analysis here, it is worth noting that the Town presented no evidence that there were any other Town residents seeking such an accommodation. Nor is it clear that even if there were many others in similar situations, that a making large number of such exceptions would fundamentally change the zoned areas from single family residences to multiple family areas.

which, in addition to adding expense for the Leishmans, would cause additional traffic, noise and disruption in the neighborhood.

By arguing for summary judgment on this issue, the Town is indirectly asking the court to rule as a matter of law that the Town's proposal to have the caregivers live in the Leishmans' basement or addition is the only reasonable accommodation the Town was required to make. In making this argument, the Town ignores that allowing the caregivers to live in the outbuilding does not change the status quo that has existed now for several years and disregards that Christine's treating physician has opined that having non-family members live in the main residence would have an impact on Christine's condition. The Town maintains that the doctor's opinion that Christine would suffer undue anxiety should not be considered, arguing that he is unqualified to give such an opinion. On a motion for summary judgment, however, the facts are to be read in the nonmovants' favor. The Commission and the Leishmans have submitted sufficient evidence to create an issue of fact requiring that summary judgment be denied.

Even if the court were to ignore the evidence about Christine's anxiety, the Town's argument still fails. The Town has not indisputably established that it would be unreasonable for the caregivers to live in the outbuilding or that it would be inherently more reasonable for them to live in the basement or new addition. Put another way, even if it were reasonable for the caregivers to live in the basement or a new addition, that alone does not prove that it would be unreasonable for the caregivers to live in the outbuilding. Consequently, there is no basis in the record to determine that the only reasonable course of action is to have the caregivers live in the basement or addition.

The essence of the Town's argument is that its zoning authority is paramount and that any request to alter it in any way is *per se* unreasonable.  Of course, this argument does not comport with federal law, and federal courts "have unanimously applied the [FHA's] reasonable accommodations requirement to zoning ordinances and other land use regulations and practices."[10]

Finally, the court observes that the Town's reliance on *Brandt v. Village Chebanse, Ill.*,[11] is misplaced.  In *Brandt*, the plaintiffs requested a zoning variance to build a four-unit building, which included handicapped-accessible units on the first floor, in a single family zone.[12]  No handicapped persons were living at the site where the plaintiffs intended to construct the building.  When the village refused to grant the variance, the plaintiffs sued under the FHA.  The Seventh Circuit ruled in favor of the village, finding that the request to build the four-unit building was not an "accommodation" at all, but rather an attempt to make an end-run around the village's zoning plan by building an accessible building at that site.[13]  In the end, it was clear to the court that the plaintiffs were seeking to make more money by building more units in an area intended for single

---

[10] *Corporation of Episcopal Church in Utah v. West Valley City*, 119 F. Supp. 2d 1215, 1222 (D. Utah 2000) (citing *Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 462-63 (D.N.J. 1992); *Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179, 1180 (E.D.N.Y. 1993); *Horizon House Developmental Servs., Inc. v. Township of Upper Southampton*, 804 F.Supp. 683, 699-700 (E.D. Pa. 1992); *Stewart B. McKinney Foundation, Inc. v. Town Plan & Zoning Comm'n of the Town of Fairfield*, 790 F. Supp. 1197, 1221 (D. Conn. 1992); *United States v. Village of Marshall*, 787 F. Supp. 872, 878 (W.D. Wis. 1991); *Oxford House-Evergreen v. City of Plainfield*, 769 F. Supp. 1329, 1344-45 (D.N.J. 1991); and *United States v. Commonwealth of Puerto Rico,* 764 F. Supp. 220, 224 (D.P.R. 1991).)

[11] 82 F.3d 172 (7th Cir. 1996)

[12] 82 F.3d at 173.

[13] 82 F.3d at 174-75.

family use and simply were attempting to use the FHA as a tool to alter the zoning plan.[14]  On *that* record, the Seventh Circuit made the comment that the FHA was not intended to turn the "United States into a multi-family dwelling zone."[15]

The Town relies, incorrectly, on *Brandt* to advance a slippery slope argument.  The Town argues that if it must make an accommodation in this case, it would have to make accommodations in every case, rendering its zoning power meaningless.  But of course, by its own terms the FHA only applies to genuine, reasonable requests for accommodations by disabled people.  While making such accommodations may impose limits on its ability to enforce its zoning powers in specific limited circumstances, it is a far stretch to say that doing so will abrogate its power entirely.

*Brandt* is not a case about denying genuine requests for accommodations to avoid a slippery slope.  Rather, the "accommodation" requested in *Brandt* was not an accommodation at all, but a disguised attempt to avoid zoning rules.  Of course, if courts were to start enforcing that kind of request, the FHA would indeed convert the United States into a multi-family zone.  Here, however, unlike in *Brandt*, there is every indication that Leishmans are making the request as a sincere attempt to obtain a reasonable accommodation for Christine.  There is no hint that the Leishmans' request for an accommodation was motivated by anything but making it possible for Christine to stay at home.[16]

---

[14] 82 F.3d at 175.

[15] *Id*.

[16] Likewise, the Town's citation to *Men of Destiny Ministries, Inc. v. Osceola County*, 2006 WL 3219321 (M.D. Fla. Nov. 6, 2006) does not carry the day for the Town.  Under the FHA, it is discriminatory in and of itself to deny a reasonable accommodation to a disabled

For all these reasons, summary judgment in the Town's favor on the issue of whether the Leishmans' accommodation request was reasonable is not appropriate.

## III. Applicability of Exemptions

The Town argues that 42 U.S.C. § 3603(b)(2) and Utah Code § 57-21-3(3) exempt dwellings occupied by no more than four families, if owner occupied. According to the Town, this exemption excuses the Town from making an FHA accommodations to the Leishmans because the Leishmans occupy the main house and the caregivers occupy the outbuilding. Plaintiffs reply that those exceptions only apply to the owner of the dwellings seeking the accommodation, not to municipalities using their zoning power. As explained below, the court agrees with the Plaintiffs.

The FHA contains exemptions, explaining that the provisions on § 3604 of shall not apply to:

> (1) any single-family house sold or rented by an owner: . . . or
>
> (2) rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.[17]

On their face, these exemptions do not mention any limit on parties to whom they apply. The question is: does (b)(2) apply only to owners, as argued by Plaintiffs, or does it also apply to the

---

person. *See* 42 U.S.C. § 3604(f)(3)(B). It does not appear that plaintiffs must prove that there was a discriminatory motive behind the denial. In *Men of Destiny*, however, the court appears to have based its judgment in favor of the county on the conclusion that the plaintiffs had failed to show such a motive, explaining that "this Court's finding that the [county] did not deny the [conditional use permit] because of concerns over the residents' possible drug or alcohol use is fatal to [plaintiffs'] FHA claim." 2006 WL 3219321 at *6.

[17] 42 U.S.C. § 3603(b)(1)-(2).

Town, thus exempting the Town from making an accommodation?

Neither the Town nor Plaintiffs cited any cases that are directly on point.  However, in *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.,*[18] the court provides analysis applying the exemptions.  In that case, the Sixth Circuit upheld the lower court's holding that (b)(1) "is applicable *only* to the sale and rental transactions of single family homeowners *and not* of municipal actions affecting single family homes."  (Emphasis added.)  The logic of this analysis extends to subparagraph (b)(2).  Read in context, it is rather obvious that these exemptions are intended to spare the costs of compliance by homeowners selling their single family homes and people renting out rooms or units in their homes.  This reading of the exemptions applies equally to the Utah FHA's four home exemption, on which there is also no case law.

Moreover, interpreting the exemptions as the Town argues leads to absurd and certainly unintended results.  In effect, any municipality would be excused from complying with the FHA for all owner-occupied dwellings intended to be occupied by four or fewer families.  A local government could, for example, preclude a disabled person from building a ramp for access or from making cuts in sidewalks in an owner-occupied four unit condominium building.  But this type of project is exactly the type of activity the FHA is meant to encourage.  In other words, reading the exemption as applying to municipalities' zoning powers over units of four or fewer dwellings would eviscerate FHA's intent here, and the courts must avoid such a result.

## IV.     Meaning of "Dwelling" Under the FHA

The Town argues that the FHA and Utah FHA do not apply to the outbuilding because it is not a dwelling.  This argument fails.  The "dwelling" at issue is not the outbuilding, but the home

---

[18] 13 F.3d 920, 924 n.5 (6th Cir. 1993).

in which Christine lives. The issue is whether Christine can fully enjoy the privileges of living in her home if the caretakers are not allowed to live in the outbuilding, not whether the caregivers should have a right to live in the outbuilding. Accordingly, the Town does not prevail on this argument.

**V.      Unclean Hands**

Finally, the Town argues that Plaintiffs should be denied relief because, among other things, the Leishmans have allowed the caregivers to continue to live in the outbuilding despite the fact that the 120 conditional use permit expired.[19] According to the Town, one of the terms of the conditional use permit was that after it expired, the caregivers had to move out of the outbuilding. The factual basis for the argument is weak at best. Promptly after the Town refused to extend the permit, the Leishmans began to pursue a legal remedy to challenge the Town's refusal to make an accommodation. And the Leishmans have already prevailed on their claim at the state administrative level.

Moreover, the unclean hands defense does not apply here. As stated by the Supreme Court, "[w]e have rejected the unclean hands defense 'where a private suit serves important public purposes.'"[20] Clearly, ensuring that disabled people enjoy equal rights to housing is an important public purpose.

---

[19]The Town also points to other actions the Leishmans took, such as making the outbuilding habitable and beginning work on a breezeway between their house and the outbuilding, both apparently without proper permits. While these actions may or may not have violated relevant Town codes, they certainly do not raise to the level of egregious behavior that would lead to a conclusion that the Leishmans have unclean hands.

[20]*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360-61 (1995) (quoting *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 138 (1968).)

In addition, even if the doctrine were to apply here, unclean hands is an equitable tool to be used in the court's discretion.[21] There are no facts indisputably showing that the Leishman's conduct has been so outrageous as to preclude them from relief here.

## VI.  Personal Liability for Mr. Atwood

Plaintiffs concede that this suit is brought against Mr. Atwood in his personal capacity only. Plaintiffs then set out the standard for personal liability under the FHA: they must show proof that Mr. Atwood was "personally or vicariously involved in the acts of discrimination."[22] But the only fact relied upon by Plaintiffs in arguing personal involvement by Mr. Atwood is his statement at a Town council meeting that "one person in the entire town did not warrant changing an ordinance." This statement alone can not be reasonably interpreted as proof that Mr. Atwood was personally in charge of the decision to deny the accommodation.

Although Mr. Atwood appears to have been a major proponent for denying the accommodation, there is no evidence that he had any authority, acting in his personal capacity, to act on behalf of the Town. Indeed, the evidence is that the Town's council took a vote to deny a continuation of the Leishmans' permit. The record evidence at this point is insufficient to create an issue of fact of whether Mr. Atwood was acting in any capacity other than in his official capacity when he spoke about or took actions with respect to the Leishmans' accommodation request. Nor do the Plaintiffs describe any evidence they believe they may be able to discover that could reasonably lead to the conclusion that the Mr. should be personally liable. To the contrary,

---

[21] *See Springfield Holding Co. Ltd LLC v. Stone*, 2009 WL 1580182, *7 (10th Cir. June 8, 2009).

[22] *Flores v. Village of Bensenville*, 2003 WL 1607795, * 3 (N. D. Ill. 2003).

the only evidence the parties have brought to the court's attention makes it clear that Mr. Atwood acted only in his capacity as mayor. Accordingly, Mr. Atwood shall be dismissed from the action.

## CONCLUSION

For the reasons stated above, the court ORDERS as follows: the Town's motion for summary judgment is DENIED and Mr. Atwood's motion for summary judgment is GRANTED.

Dated this 16th day of September, 2009.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge